FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 AUG 19 P 2: 14

CLERK'S OFFICE
AT GREENBELT
BY_____DEPUTY

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
Southern Division

SEYED MOUSSAVI, *et al.*

    Plaintiffs,

v.

JPMORGAN CHASE BANK N.A., *et al.*

    Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Case No.: GJH-15-2094

## MEMORANDUM OPINION

Plaintiffs Seyed and Mary Moussavi (collectively, "Plaintiffs") brought this action against Defendants JPMorgan Chase Bank N.A. ("Chase"), Chase Loan Servicing,[1] and Hudson City Savings Bank ("Hudson") (collectively "Defendants") alleging: (1) violations of the Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. § 7-401 *et seq.* (Count I); (2) a claim of common law fraud (Count II); (3) violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301 *et seq.* (Count III); and (4) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Count IV). ECF No. 1. Presently pending before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint. ECF No. 11. No hearing is necessary to resolve the Motion. *See* Loc. R. 105.6 (D. Md.). For the reasons that follow, Defendants' Motion to Dismiss is granted.

---

[1] In their motion to dismiss, Defendants note that "Chase Loan Servicing" is not an entity separate from JPMorgan Chase Bank N.A. Plaintiffs allege, however, that Chase Loan Servicing is a "wholly owned subsidiary" of JPMorgan Chase Bank N.A. ECF No. 1 ¶ 3. In opposing Defendants' Motion to Dismiss, Plaintiffs suggest that any claims relating to the conduct of "Chase Loan Servicing" are attributable to Chase, ECF No. 12-1 at 10–11, so the Court will assume for purposes of this Motion that Plaintiff's allegations against "Chase Loan Servicing" are in actuality claims against Chase.

## I.   BACKGROUND[2]

Plaintiffs are husband and wife and are owners of residential property located in Chevy Chase, Maryland (the "Property"). ECF No. 1 ¶ 1. On March 20, 2007, a promissory note (the "Note") in the original principal amount of $524,000.00 was executed in favor of First National Bank of Arizona and was secured by a deed of trust executed by Plaintiffs on the Property. *See* ECF No. 1-2 at 2, 5.[3] First National Bank of Arizona subsequently executed and attached an allonge to the Note bearing a special indorsement, thereby making the Note payable to the First National Bank of Nevada.[4] *See id.* at 8. First National Bank of Nevada also added a blank indorsement on the allonge, making the Note payable to the bearer, *i.e.*, the holder, of the Note.[5] *Id.* The allonge does not include the dates on which these indorsements occurred. *See id.*; ECF No. 1 ¶ 24.

On December 2, 2011, Plaintiffs defaulted on the Note by failing to make payments in accordance with its terms. *See* ECF No. 1-2 at 1; ECF No 1 ¶ 26. On May 25, 2012, the Mortgage Electronic Registration System, ("MERS"), as nominee for First National Bank of Arizona, executed an Assignment of Deed of Trust (the "Assignment") to Chase, thereby transferring all beneficial interest in the deed of trust to Chase. ECF No. 1 ¶ 12; ECF No. 1-2 at 5. A Notice of Intent to Foreclose ("Foreclosure Notice") was sent to Plaintiffs on June 20, 2012,

---

[2] In considering Defendants' Motion to Dismiss, the Court relies upon the facts alleged in the complaint, materials attached thereto, as well as matters of public record. *See Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). All facts are viewed in the light most favorable to Plaintiffs.

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[4] "An allonge is generally a slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *Deutsche Bank Nat. Trust Co. v. Brock*, 63 A.3d 40, 42 (Md. 2013) (citation and internal quotation marks omitted). Pursuant to Md. Code Ann., Com. Law § 3-204(a), an allonge is considered to be a part of the Note. *See id.*

[5] *See* Md. Code Ann., Com. Law § 3-205(b) ("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.")

which named Chase as the "secured party," and as the "loan servicer," and included a telephone number to contact Chase. ECF No. 1 ¶¶ 7–8; ECF No. 1-2 at 1. Chase participates in the Home Affordable Modification Program ("HAMP") for rental properties, which, according to the Complaint, allows property owners to seek mortgage modification such that mortgage payments under the modification would be equal to the rental income received for the property. *See* ECF No. 1 ¶¶ 9, 22. In July 2013, relying on the indication that Chase was the "secured party" of the Note, Plaintiffs borrowed "thousands of dollars" to fix the Property to meet rental conditions so that they could lease the property and seek a mortgage modification under the HAMP, assuming that such modification would allow them to avoid foreclosure. *Id.* ¶ 9. Plaintiffs at that time did not know, however, that Hudson was in fact the owner of the Note, and that Hudson does not participate in the HAMP.[6] *See id.* ¶ 17. Plaintiffs did eventually use the Property as a rental unit, and a tenant renewed a lease at the Property, on or about June 1, 2014, for an additional year. *Id.* ¶ 28.

On September 5, 2013, a foreclosure action was initiated in the Circuit Court for Montgomery County, Maryland when an order to docket suit was filed containing both a copy of the Assignment and an Affidavit Certifying Ownership of Debt ("Affidavit"). *Id.* ¶ 10; *see also Burson v. Moussavi*, No. 328043V (Montgomery Cnty. Cir. Ct.) (the "First Foreclosure Action"). The Affidavit, dated May 27, 2013, certified that Chase was the current owner of the Note. *Id.* ¶¶ 12–13. On October 4, 2013, Plaintiffs submitted a HAMP application and request for a loan modification to Chase. *Id.* ¶ 14. On October 15, 2013, the substitute trustees in the foreclosure action filed a final loss mitigation affidavit with the Montgomery County Circuit Court, stating that the loan was "serviced by Chase who is participating in [HAMP] but the loan was ineligible

---

[6] Neither the Complaint, nor any of the materials attached thereto, explain how or when ownership of the loan was transferred to Hudson.

or otherwise did not qualify for HAMP because the modification does not meet the investor guidelines or the investor is not participating in the program and the borrower did not request consideration for non-retention alternatives." *Id.* ¶ 15.

On October 21, 2013, Chase notified Plaintiffs that the loan modification and all other home retention loss mitigation options were denied because the "secured party," Hudson, does not participate in HAMP modifications. *Id.* ¶¶ 16–17. Plaintiffs allege that this communication was the first time they had been notified of Hudson's ownership of the loan. On November 22, 2013, Plaintiffs' counsel conferred with the substitute trustees in the First Foreclosure Action, who confirmed that Chase was only the servicer of the loan and that Hudson had "always" owned the Note. *Id.* ¶ 19. On January 16, 2014, the substitute trustees voluntarily dismissed the First Foreclosure Action, which, according to Plaintiffs, occurred because the substitute trustees acknowledged that the Affidavit certifying Chase as the owner of the Note was false. *Id.* ¶ 21.

On June 17, 2014, the substitute trustees provided notice to Plaintiffs that their client had a copy of the Note that was indorsed in blank, and indicated that they would proceed to foreclose on the property. *Id.* ¶ 23. Plaintiffs allege that the Note referenced by the substitute trustees contained additional markings not on the Note filed in the First Foreclosure Action, and that the allonge indorsed in blank also was not filed in the First Foreclosure Action. *Id.* On June 18, 2014, Plaintiffs advised the substitute trustees of their suspicions regarding the authenticity of the Note and the allonge, and requested documentation supporting its authenticity. *Id.* ¶ 27. According to Plaintiffs, "[u]pon information and belief, there [are] a bundle of mortgages secured by properties all over the country that contain identical fraudulent allonges where [the First National Bank of] Nevada [i]ndorses the note to . . . [the First National Bank of Arizona] and then [i]ndorses the note in blank." *Id.* ¶ 29.

4

Without resolving Plaintiffs' dispute as to the authenticity of the Note and allonge, on December 4, 2014, the substitute trustees initiated a second foreclosure action in the Montgomery County Circuit Court. *See id.* ¶ 30; *see also O'Sullivan et al. v. Moussavi et al.*, No. 398017V (Montgomery Cnty. Cir. Ct.) (the "Second Foreclosure Action"). Plaintiffs allege that, in initiating this second action, the substitute trustees relied upon various fraudulent documents, including a "different version" of the Note than that which was filed in the First Foreclosure Action, the allonge indorsed in blank, an affidavit affirming that the Note was owned by Hudson, and an affidavit certifying that the original Foreclosure Notice was accurate. *Id.* ¶ 30. Plaintiffs allege that these filings in the second foreclosure action were part of an effort by Defendants to engage in an "unlawful cover up" of the fact that Chase was never an owner of the Note. *Id.* ¶ 34. On March 31, 2015, Plaintiffs moved to stay or dismiss the second foreclosure action, but the court denied Plaintiffs' motion, allowing the foreclosure to proceed.[7] *Id.* ¶¶ 32–33.

Plaintiffs filed their Complaint in this Court on July 7, 2015, and Defendants moved to dismiss the Complaint on September 15, 2015. ECF Nos. 1 & 11. On October 11, 2015, Plaintiff filed an opposition to Defendants' Motion to Dismiss, ECF No. 12, and Defendants filed their reply on October 29, 2015, ECF No. 13.

## II.    STANDARD OF REVIEW

Defendants have moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. When deciding a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," and "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*

---

[7] Plaintiffs also filed counterclaims against Chase and Hudson in the second foreclosure action, which were then severed from that action. *See O'Sullivan et al. v. Moussavi et al.*, No. 398017V (Montgomery Cnty. Cir. Ct. March 31, 2015); *Moussavi, et al. v. JP Morgan Chase Bank National Association, et al.*, No. 402230V (Montgomery Cnty. Cir. Ct.). In July 2015, Plaintiff voluntarily dismissed the counterclaims without prejudice.

*v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks

omitted). Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must

contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). But to survive a motion to dismiss invoking Federal Rule of Civil

Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to

state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must be

more than "labels and conclusion . . . . Factual allegations must be enough to raise a right to

relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555; *see also id.* ("[T]he pleading

must contain something more . . . than . . . a statement of facts that merely creates a suspicion

[of] a legally cognizable right of action" (quoting 5 C. Wright & A. Miller, Federal Practice and

Procedure § 1216, 235–36 (3d ed. 2004)). A complaint will not survive Rule 12(b)(6) review

where it contains "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 663. "But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

pleader is entitled to relief.'" *See id.* at 679 (citing Fed. Rule Civ. Proc. 8(a)(2)).

Furthermore, "[w]hen a plaintiff alleges fraud or when 'the gravamen of the claim is

fraud even though the theory supporting the claim is not technically termed fraud,' [Federal Rule

of Civil Procedure] 9(b) requires that 'the circumstances constituting fraud be stated with

particularity.'" *Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 (D. Md. 2009) (quoting *Adams v.

NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000); Fed. R. Civ. P. 9(b)). To satisfy this

6

standard, plaintiffs "must, at a minimum, describe the time, place, and contents of the false

representations, as well as the identity of the person making the misrepresentation and what he

obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370,

379 (4th Cir. 2008) (internal quotation marks and citation omitted). "These facts are often

referred to as the 'who, what, when, where, and how' of the alleged fraud." *Id.* (quoting *United*

*States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)).

## III.   DISCUSSION

### A.  MMFPA, MCPA, and Common Law Fraud Claims (Counts I, II, and III)

Each of Plaintiffs' state law claims is predicated on one common allegation: that they

were deceived by the June 20, 2012 Foreclosure Notice and its representation that Chase was the

"secured party" of the Note and its failure to identify Hudson as the owner. *See* ECF No. 1 ¶¶ 39,

43, 53. Defendants argue, however, that the failure to identify Hudson as the owner of the Note

was not deceptive or misleading, and that, while the Foreclosure Notice may have been

"incomplete" in its failure to identify Hudson as the owner, the fact that a notice is incomplete

does not make it false or misleading to support a claim of fraud. *See* ECF No. 11-1 at 6–7.

Maryland has set forth specific requirements for what information must be included in a

foreclosure notice, and a review of the relevant Maryland law is necessary to resolve this dispute.

Before a foreclosure action can be filed against residential property in Maryland, the

borrower must be notified, in writing, of the impending foreclosure at least 45 days before the

initiation of foreclosure proceedings. Md. Code Ann., Real. Prop. § 7-105.1(b)(1)(i). Among

other things, the written notice must contain the name and telephone number of "*the secured*

*party*, the mortgage servicer, if applicable, and an agent of the secured party who is authorized to

modify the terms of the mortgage loan." *Id.* at § 705.1(c)(4)(ii) (emphasis added). The meaning

7

of "secured party" is not defined in the statute, but in *Shepherd v. Burson*, 50 A.3d 567 (Md. 2012), the Maryland Court of Appeals concluded that a mortgage servicer qualifies as a secured party as "the holder of [the] Note secured by a deed of trust." *Id.* at 574.

In *Shepherd*, the Court of Appeals faced an analogous factual scenario as the one presented in this case. There, the borrower, Camille Shepherd, defaulted on a loan that was secured by a deed of trust on her home. *Id.* at 570. On June 5, 2009, Shepherd was sent a notice of intent to foreclose which identified OneWest Bank FSB ("OneWest") as the "secured party" on the loan and provided the name and phone number of a person with authority to modify the terms of the loan. *Id.* Foreclosure proceedings were initiated over four months later, on October 28, 2009, and among the various documents filed to commence the action was a copy of the notice of intent to foreclose identifying OneWest as "the secured party" and an affidavit certifying ownership of the debt instrument, which identified Federal Home Loan Mortgage Corporation ("Freddie Mac") as the owner of the loan and OneWest as "the holder of the note secured by a deed of trust." *Id.* at 571. The affidavit filed in the foreclosure proceeding was the first time Shepherd was advised of Freddie Mac's involvement in her loan. After foreclosure proceedings were delayed multiple times based on Shepherd's filing for bankruptcy, a foreclosure sale was scheduled for January 2011. Shepherd moved to dismiss the foreclosure sale, arguing that the failure to identify Freddie Mac as the secured party in the notice of intent to foreclose violated the notice requirements set forth in § 705.1(c)(4)(ii). The court denied the motion to dismiss, concluding that any deficiency in the notice did not prejudice Shepherd's rights, and allowed the foreclosure sale to proceed. *Id.* at 572. Shepherd appealed to the Maryland Court of Special Appeals, but, prior to briefing or a decision by that court, petitioned for a writ of certiorari to the Court of Appeals, which was granted. *Id.*

The Court of Appeals explained that the purpose of a foreclosure notice is to provide homeowners at risk of foreclosure with additional time and information to negotiate loan modification and avoid foreclosure. *Id.* at 554; *see id.* at 556–57 ("The evident purpose of the . . . identification of the 'secured party' . . . is to allow the borrower to pursue a modification of the loan or other action to forestall foreclosure."); *see also* Md. Code Ann., Real Prop. § 7-105.1(c)(1). Although Freddie Mac, as the owner of the loan, was clearly a secured party, the court concluded that OneWest was also a secured party "as the holder of . . . Shepherd's note . . . ." *Shepherd*, 50 A.3d at 574. Identifying OneWest on the notice, therefore, satisfied the statutory purposes because the notice "included details to allow [Shepherd] to seek a loan modification, including the name and phone number of a specific individual" at OneWest. *Id.* at 576. In affirming the lower court's decision to allow the foreclosure to proceed, the Court of Appeals rejected Shepherd's characterization of the notice's failure to identify Freddie Mac as being "unfair," "deceptive," or "misleading," and rather characterized the notice as merely "incomplete." *Id.* at 556–57.

Relying on *Granados v. Nadel*, 104 A.3d 921 (Md. Ct. Spec. App. 2014), Plaintiffs argue, however, that the June 20, 2012 Foreclosure Notice was not only incomplete, but rather was inaccurate. ECF No. 12-1 at 6. In *Granados*, a foreclosure action was initiated against Ramon Granados after he was sent a foreclosure notice identifying the then-current servicer of his loan. *Granados*, 104 A.3d at 925–26. After the initial foreclosure action was voluntarily dismissed without prejudice, Granados' loan was transferred to a new owner and new servicer. *Id.* at 926. A second foreclosure action was initiated, but Granados was never sent a new notice of intent to foreclose identifying any individual he could contact regarding a loan modification. *See id.* at 928. The Maryland Court of Special Appeals distinguished *Shepherd* and concluded

9

that, under those circumstances, the foreclosure sale could not proceed. The court explained that, although "the [notice] fulfilled its purpose for the *original* foreclosure action" it could not be used for the second foreclosure proceeding because, by the time that action was initiated, the notice "was not just incomplete, it was also inaccurate. It did not name the current secured party or the loan servicer, nor did it contain contact information for someone authorized to perform loan modification as of the time the order to docket was filed." *Id.* at 936.

Here, Plaintiffs do not allege that Chase is not or was not the servicer of the loan in possession of the Note, and therefore a "secured party" pursuant to *Shepherd*, when it issued the June 20, 2012 Foreclosure Notice or at the time either foreclosure action was initiated.[8] *See* ECF No. 1. It appears, however, that Plaintiffs' claims derive from their suggestion that the allonge indorsing the Note in blank was fraudulent and that Chase was therefore not in fact in possession of a validly indorsed note when it sent the Foreclosure Notice.[9] In this regard, Plaintiffs allege: "Upon information and belief, there [are] a bundle of mortgages secured by properties all over the country that contain identical fraudulent allonges where [the First National Bank of] Nevada [i]ndorses the note to . . . [the First National Bank of Arizona] and then [i]ndorses the note in blank." ECF No. 1 ¶ 29. Plaintiffs fail to specifically allege that the allonge at issue in this case was fraudulent, or allege any facts, beyond that the allonge was undated, to support an inference

---

[8] Plaintiffs do allege, however, that Chase was never the "owner" of the Note. ECF No. 1 ¶ 34. Assuming that is true, as the Court must on a motion to dismiss, it would have no bearing on the present dispute because, as the Court of Appeals held in *Shepherd*, a servicer of a loan that is the holder of a note is a "secured party" within the meaning of § 705.1(c)(4)(ii). Thus, so long as Chase was, in fact, the holder of the Note, the June 20, 2012 Foreclosure Notice's identification of Chase as the "secured party" would not have been inaccurate. *See Shepherd*, 50 A.3d at 574; *see also Brock*, 63 A.3d at 49 (quoting Md. Code Ann., Com. Law § 3-301) ("The holder of a note is 'entitled to enforce the instrument even [if it is] not the owner of the instrument or is in wrongful possession of the instrument.'").

[9] If Plaintiffs are alleging that the fact that the allonge included a blank indorsement is alone reason to conclude that it is fraudulent, their claim must fail. It is well settled in Maryland that "the person in possession of a Note, either specially indorsed to that person or indorsed in blank, is a holder entitled generally to enforce that Note." *Brock*, 63 A.3d at 49.

that the allonge was fraudulent.[10] Nor do Plaintiffs allege any facts suggesting that Chase and/or Hudson had any involvement in creating the allegedly fraudulent allonge. *See Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 (D. Md. 2009) ("[U]ndifferentiated assertion of fraud against multiple defendants is prohibited by Rule 9(b)" of the Federal Rules of Civil Procedure). So long as Chase was the holder of a properly indorsed Note, even if such indorsement was in blank, it was a "secured party" at the time it issued the June 20, 2012 Foreclosure Notice. *See Shepherd*, 50 A.3d at 574. Pursuant to *Shepherd*, then, the Foreclosure Notice's identification of Chase as the "secured party," though "incomplete" due to its failure to also identify Hudson, was not "unfair," "deceptive," or "misleading." *Id.* at 576.

Thus, because Plaintiffs do not allege that the Foreclosure Notice's identification of Chase as a secured party was inaccurate and deceptive, a fact central to each of their state law claims in this case, these claims must be dismissed. *See Galante v. Ocwen Loan Servicing LLC*, No. CIV.A. ELH-13-1939, 2014 WL 3616354, at \*22, 28 (D. Md. July 18, 2014) (noting that, "in order to state a MMFPA claim, plaintiffs must plead the elements of a common law fraud claim" which, in Maryland, requires proof that a defendant made a "false representation" to the plaintiff); *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citations omitted) (noting that MCPA claim requires an allegation of, *inter alia*, "an unfair or deceptive practice or misrepresentation").

Even assuming the Complaint alleged facts supporting an inference that the June 20, 2012 Foreclosure Notice was false or deceptive in only identifying Chase as the "secured party," Defendants argue that dismissal is necessary for the additional reason that Plaintiffs have failed

---

[10] Presumably in denying Plaintiffs' motion to dismiss the Second Foreclosure Action, the state court concluded that the allonge was not fraudulent. Defendants have not argued, however, that Plaintiffs' claims in this case are barred by res judicata or issue preclusion, and the Court therefore assumes, without deciding, that if Plaintiffs can allege additional facts supporting their claim that the allonge is fraudulent, then they may be able to pursue these claims.

to allege that they reasonably relied on any such misrepresentation in expending "thousands of dollars" to renovate the property with only the vague hope that their loan would be approved for a HAMP modification. *See* ECF No. 1 ¶ 9; ECF No. 11-1 at 10–12, 13, 14–15. Indeed, Plaintiffs' claims for violation of the MMFPA, MCPA, and common law fraud, all require proof that Plaintiffs reasonably relied on such misrepresentations to their detriment. *See Kaswell v. Wells Fargo Bank, N.A.*, No. CIV.A. RDB-13-2315, 2014 WL 3889183, at *7 (D. Md. Aug. 6, 2014) (citing *Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings, LLC*, 929 F.Supp.2d 502 (D. Md. 2013)) (noting that "a plaintiff must show reliance and actual damages based on the misrepresentations" in action under MMFPA); *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 253 (D. Md. 2013), *aff'd*, 582 F. App'x 246 (4th Cir. 2014) (noting that claims of common law fraud and for violation of MCPA both require a showing that the plaintiff "reasonably relied to their detriment on some promise or misrepresentation made").

"A party is justified in relying on another's factual assertions unless, 'under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance or he has discovered something which should serve as a warning that he is being deceived . . . .'" *Moseman v. Van Leer*, 263 F.3d 129, 132 (4th Cir. 2001) (quoting *Gross v. Sussex Inc.*, 630 A.2d 1156, 1166 (Md. 1993)). "In determining if reliance is reasonable, a court is required to view the act in its setting, and consider such factors as the background and experience of the party that relied upon the representation." *Dierker v. Eagle Nat. Bank*, 888 F. Supp. 2d 645, 653–54 (D. Md. 2012) (citations and internal quotation marks omitted).

In a case from this district, where a borrower had been approved for a trial period plan ("TPP"), during which they would pay reduced mortgage payments, pending approval of a permanent loan modification, but then received a series of contradictory letters from their loan

12

servicer advising them to, *inter alia*, not remit payments, the court found that the subsequent

harm resulting from the borrower's reliance on those statements was reasonable. *See Allen v.*

*CitiMortgage, Inc.*, No. CIV. CCB-10-2740, 2011 WL 3425665, at *8 (D. Md. Aug. 4, 2011).

There, the court explained:

> The plaintiffs allege that [their loan servicer] CitiMortgage made a clear and
> definite promise that "if they made their temporary loan modification payments
> [and] met the criteria for a HAMP modification, then they would receive a
> permanent HAMP modification, and that Defendant would not report Plaintiffs as
> delinquent as long as they were in compliance with making the agreed-upon
> payments." The [plaintiffs] also allege that they detrimentally relied on
> CitiMortgage's promises by relinquishing other remedies to save their home, such
> as restructuring their debt under the bankruptcy code, and by devoting their
> resources to making the lower monthly payments under the TPP Agreement. If
> they had known that they would not qualify for a permanent loan modification or
> that CitiMortgage would report them as delinquent to credit reporting agencies for
> making lower monthly payments under the TPP, the plaintiffs allege they would
> have pursued other options, including possibly selling their home.

*Id.* But where a plaintiff does not allege that the defendant "specifically directed [the plaintiffs]

to do, or to refrain from doing, anything that adversely affected the state of affairs that existed

prior to the alleged misrepresentations," reliance on any alleged misrepresentations is not

reasonable. *Green*, 927 F. Supp. 2d at 255–56.

Here, although Plaintiffs allege that they "relied upon Chase as the holder of the

mortgage note, who participates in HAMP modifications for rental properties" in deciding to

"borrow[] thousands of dollars to fix the property to meet rental conditions," ECF No. 1 ¶ 9, the

mere indication that Chase was the secured party was not sufficient reason to believe that

Plaintiffs would eventually be granted a HAMP loan modification. *See, e.g.*, *Kaswell*, 2014 WL

3889183, at *6 (dismissing MMFPA and MCPA claims where "[p]laintiff [did] not allege that

Wells Fargo ever made a representation that his loan modification would be approved"). If, for

instance, Plaintiffs had some reason to believe that most or all HAMP applications are approved,

or they contacted Chase and received some notification that that their property would qualify for modification under HAMP if they undertook such renovations, or they otherwise received some indication that pursuing this course was the best way for them to avoid foreclosure, Plaintiffs' reliance on Chase's indication that it had the power to modify the loan through the HAMP may have been reasonable. Based on the facts alleged in the Complaint, however, the Court cannot draw that inference.

The Court will, however, give Plaintiffs an opportunity to amend their Complaint to allege additional facts that would support their claims. *See Hinks v. Bd. of Educ. of Harford Cty.*, No. CIV. WDQ-09-1672, 2010 WL 5087598, at *2 (D. Md. Dec. 7, 2010) (citation and internal quotation marks omitted) ("When a plaintiff's complaint fails to state a claim, he should generally be given a chance to amend the complaint . . . before the action is dismissed with prejudice."). If Plaintiffs can cure these deficiencies, then their claims alleging violations of the MMFPA, MCPA, and common law fraud may proceed.

### B. FDCPA Claim (Count IV)

Plaintiffs allege in Count IV that Defendants violated the FDCPA under 15 U.S.C. §§ 1692e, 1692e(5), 1692f, and 1692g. This claim, however, is barred by the FDCPA's one-year statute of limitations. *See* 15 U.S.C. § 1692k ("An action to enforce any liability created by [the FDCPA] may be brought . . . within one year from the date on which the violation occurs."). "[T]he limitations period for FDCPA claims commences from the date of the first violation, and subsequent violations of the same type do not restart the limitations period." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 316 (D. Md.), *aff'd*, 584 F. App'x 135 (4th Cir. 2014) (citations and internal quotation marks omitted). Plaintiffs, seemingly aware that this claim is barred, plead that "[t]he FDCPA statute of limitation must be enlarged for some of the conduct

14

alleged above because [Plaintiffs] did not know [they] had a cause of action against the defendants until the substitute trustees on June 17, 2014 advised they would move forward with the second foreclosure." ECF No. 1 ¶ 65. But Plaintiffs allege earlier in the Complaint that Defendants "violated 15 U.S.C.A § 1692e(5) by threatening [Plaintiffs] that they could proceed with the foreclosure multiple times and did in fact proceed with foreclosure twice," and that Defendants "fail[ed] to disclose the true owner of the . . . mortgage Note to the Courts in the first and second foreclosure actions." *Id.* at ¶¶ 62, 64. The date of the first Foreclosure Notice was received by Plaintiffs on June 20, 2012, and the first foreclosure action was filed on September 5, 2013. Therefore, the first alleged violation occurred, at the latest, on September 5, 2013—well over a year before the filing of the Complaint. Plaintiffs failed to file their claim within the statute of limitations imposed by the FDCPA, and their claim is thus time-barred.

Plaintiffs' argument that the statute of limitations should begin from the time they knew of the violation, based on the discovery rule, is unpersuasive. Although "[t]his Court . . . has applied the discovery rule in the debtor rights context and held that a FDCPA claim accrues at the time of the violation or when the plaintiff should have known of the violation," *Stewart*, 859 F. Supp. at 760, Plaintiffs allege in the Complaint that they became aware that Chase was the servicer of the loan and Hudson is the owner of the loan on November 22, 2013, well over a year before filing their Complaint, ECF No. 1 ¶ 19. Therefore, even with application of the discovery rule, their claims are barred. Additionally, Plaintiffs' argument that the second foreclosure action was a new and discrete violation which reset the statute of limitations, *see* ECF No. 12-1 at 19, is without merit because the second foreclosure action was a continued effort to collect on the original debt outlined in the June 20, 2012 Foreclosure Notice, and the validity of this debt has not been challenged. *See Bey*, 997 F. Supp. 2d at 316–17 ("The FDCPA statute of limitations is

not reset by each communication where (1) the subsequent communications are continued efforts to collect the same debt . . . and (2) the validity of the debt itself is not challenged.").

Finally, Plaintiffs asks the Court to equitably toll the statute of limitations based on "the settlement negotiations between the parties to avoid the cost of litigation to Plaintiffs in dire financial circumstances." ECF No. 12-1 at 18. Equitable tolling is appropriate when "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (internal quotation marks omitted). Plaintiffs must show that "(1) [Defendants] fraudulently concealed facts that are the basis of the [Plaintiffs'] claim, and (2) the [Plaintiffs] failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Supermarket of Marlinton Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995). Plaintiffs do not allege any facts showing extraordinary circumstances that prevented them from filing their FDCPA claims within the statutory period after discovering that Hudson owned their mortgage loan on November 22, 2013. Therefore, there is no reason to toll the statute of limitations on the FDCPA claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 11, is granted. Counts I, II, and III of the Complaint are dismissed without prejudice, while Count IV is dismissed with prejudice. A separate Order follows.


Dated: August  19 , 2016

GEORGE J. HAZEL
United States District Judge

16